CORN, J.,
{after stating the facts as alore.) Numerous errors are assigned upon the record in this case, but it will only be necessary for us to specially notice a part of them. The court charged the jury, among other things, that “ where the fact of killing purposely by the use of a deadly weapon is proved, malice is to be presumed, unless it appears from all the evidence in this case that the killing was without malice, or was justifiable or excusable.” The charge of the court is a mono-, graph discussing the whole law of the case, and was not given to the jury by separate instructions, each setting out the law as' bearing upon a particular phase of the case,' and the principle above announced runs through the entire charge. In another part of the charge the court says, in defining “manslaughter:” “The first part of this definition is meant to cover a case when the killing is unlawful and intentional, but where the circumstances are such as to defeat the presumption raised by law as to malice.” And in another part of the charge: “If you find the killing to have been proved, and that defendant did the killing, if the prosecution has failed to prove deliberation and premeditation beyond a reasonable doubt, the law presumes such killing to be murder in the second degree, in the absence of any further evidence. The burden then falls upon the defendant to show either that such killing *283 was justifiable or excusable, or that it was attended by such facts as would limit such killing to the crime of manslaughter. ”
The principle here discussed is so essential in the law of homicide, so all-important as affecting the rights of a defendant upon trial for murder, that if it is erroneously stated, and the jury misdirected in regard to it, it cannot be doubted that the case should be retried by a jury properly instructed upon the question. That there is in the older decisions abundant precedent for such statement of the law there can be no question. That modern legal opinion has exploded the fallacy and cleared up the confusion which produced it, we think is equally clear. In a case where nothing else is shown but that the defendant intentionally killed the deceased by the use of a deadly weapon, it may perhaps be permissible to say that, such killing being proved, malice is presumed. But it is difficult to conceive of such a case. It would seem that in all eases the previous relations of the parties to the transaction would at least appear, — whether they were friends or enemies, or mere strangers. This is especially true under our law, where the defendant is a competent witness on his own behalf. Even in a case so bare of facts as the one suggested, where nothing was in evidence but that the defendant killed the deceased, and that-they were friends or enemies, or mere strangers, it would seem to be palpably improper to instruct the jury to presume the only remaining element necessary to constitute defendant’s guilt, upon proof of the killing alone, when the case was but half tried; but that the jury should be directed that it was their duty to decide from all the facts of the case, many or few, whether the killing was malicious, giving to the defendant the presumption of innocence. But, if such an instruction is permissible in certain cases, it is- not applicable here. Here every circumstance attending the killing was known to the jury; every event leading up to the tragedy was fully detailed. Why should the jury be instructed to presume malice from one fact in the ease alone, when the case was full of facts from which they might and ought to form their opinion upon that question?
The subsequent part of the charge — “The burden, then, falls upon the defendant to show either that such killing was justifiable or excusable, ” etc. — is in line with the idea first announced, and, if the first is the law, follows necessarily from it. But if the defendant is presumed to be innocent until his guilt is established, and if the prosecutor must prove every material .allegation of the indictmen&wkey;every element of guilt — beyond reasonable doubt, before he can ask for a conviction, how can the burden of proof upon any question ever fall upon the defendant? If the burden is ever upon him,.it is the burden of proving what? His innocence of the crime charged, or his innocence of some element essential to constitute the crime charged. But unless the prosecutor established every such element beyond reasonable doubt the defendant must be acquitted. Such an exigency in the prisoner’s defense can only arise, then, after the prosecution had proven the defendant’s guilt beyond all reasonable doubt, and the proposition would be thus stated: “ The prosecution having proven beyond reasonable doubt that the defendant is guilty of murder in the killing of the deceased, the burden then falls upon the defendant to show that such killing was justifiable or excusable. ” The statement of the proposition is, of course, its refutation. The doctrine that the burden never falls upon the defendant does not arise in favorem, vitce, or out of any pity or sympathy for the prisoner, but it arises out of the nature of what the sovereign power voluntarily undertakes to do before it will ask a conviction for crime at the hands of a jury.
The indictment charges the defendant with murder of a certain person, whose name was to the grand jury unknown. It is insisted by counsel for plaintiff jn error that the name of the deceased, as shown by the evidence, was .Charley Miley, and that the grand jury knew, or might have known by proper inquiry, that such was his name. They insist that the defendant cannot, under this indictment, be convicted of any crime perpetrated upon Charles Miley, and move that the defendant be discharged. If the point were well taken, the effect would be that the defendant would stand acquitted of the murder of a person unknown, and this court, under the statute, would deem it its duty to direct that he be held to await action upon his case by the grand jury for the murder of Miley. One witness upon the trial testified that the *285 name of the deceased was Charley Miley, that he learned his name at the coroner’s inquest, and afterwards stated it to the grand jury. Other witnesses testify, however, that he was a stranger in the town, and that his name was not known. He is usually designated by the witnesses as “the prisoner,” from the fact of his having been held in custody by Trumble about the time of the killing. One witness states that he understood his name to beGilliand. A number of witnesses states that for the few days he was there he was usually called “Red Bill.” Another states that he was known as “Gunny Sack Bill.” Finally the defendant himself upon the witness stand states that his name was Pete Gilmore. We think, under these circumstances, it could hardly be held that the name of the deceased was known to the grand jury, or that it was a misdescription to designate the deceased as a person whose name was to the grand jury unknown. But the prosecuting attorney, finding that a variance in this respect was insisted upon, at the close of the evidence upon the part of the territory, placed upon the stand the former prosecuting attorney, during whose incumbency the indictment was found, and offered to prove by him that he was present in the grand, jury room, and heard the testimony, and that it was impossible to obtain from the witnesses the name of the deceased. This testimony was objected to by defendant’s counsel, and their objection sustained by the court, and they cannot now complain of its absence.
It is further urged by the counsel for plaintiff in error that the record does not show the presence of the defendant in court when the verdict was received. The presence of the defendant when the verdict is received and the jury discharged is required by law, and it has been held that, if these things are done during the enforced absence of the defendant in a capital case, the verdict is a nullity, and it operates as an acquittal. Upon this question we are referred specially to the decision in Nolan v. State, 55 Ga. 521. Nothing more than what is above stated is there decided. In that ease the defendant was actually absent from court, in jail, when the verdict of guilty was received and the jury discharged. It was done without his consent, and in the absence of his counsel. There are no such circumstances in the case at bar. It is not claimed that the defendant was not present in court, but it is urged that the record does not show his presence; that this is fatal, and the defendant ought to be discharged. It is true that, the defendant’s presence in court being required by law, the record ought to show it, either in terms or by necessary inference from a consideration of the whole record. 1 Bish. Grim. Proc. § 1353. The record entry of June 17, 1887, under the title of this cause, recites the coming into court of the defendant and his counsel; the coming in and calling of the jury, and the presence of all of them; the continuation of the trial by the introduction of evidence; the argument of counsel, and the charging of the jury by the court; the retirement of the jury to consider of their verdict; the exception of defendant by his counsel to the charge of the court; and, finally, the return of the jury into court with their verdict, and the verdict itself. It is one entry, and the first recital in it is the presence of the defendant. There seems to be no reason why the court should indulge the violent presumption that the defendant had at some time during these proceedings been taken from the court-room, and not returned to it. The record shows the presence of the defendant as clearly as it could be made to appear without useless and frivolous repetitions of the one fact.
These are the only errors assigned which we deem it necessary to consider. We express no opinion upon the evidence. Dark as may be the record of the defendant’s guilt, we deem it more important that the principles governing such cases should be correctly stated than that any particular individual should be brought to speedy punishment, however guilty he may be. The judgment will be reversed, and the case remanded for a new trial.