No. 49,295

STATE OF KANSAS, *Appellee,* v. AUSTIN SHANNON DUNNAN, *Appellant.*

(573 P.2d 1068)

Opinion filed January 21, 1978.

*Camilla Klein Haviland,* of Dodge City, argued the cause and was on the brief for the appellant.

*Judd Dent,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Austin Dunnan was convicted by a jury of murder in the second degree, K.S.A. 21-3402, and felony theft, K.S.A. 21-3701. He appeals, and raises four points: that the magistrate failed to make findings sufficient to justify his action in binding the defendant over for trial; that the appearance bond fixed for the defendant was excessive and deprived him of his constitutional right to bail; that there was not sufficient evidence of malice to support the murder conviction; and that the trial court committed prejudicial error in the manner in which it answered questions from the deliberating jury.

The facts disclosed by the record are these. Late in the afternoon of January 14, 1977, Dunnan met Mike Bartlett in the Blacksmith Tavern in Dodge City, Kansas. Bartlett expressed an interest in buying a rifle, so Dunnan and Bartlett went to Dunnan's apartment where Dunnan displayed a rifle which he wished to sell. Dunnan warned Bartlett that the rifle was loaded. When Bartlett started to reach for one of two guns in a rack on the wall, Dunnan said that they were loaded, so Bartlett left them alone. The sale of the rifle was agreed upon, and the two men returned to the Blacksmith Tavern.

Dunnan met other friends, played pool, drank beer, and danced. About midnight Dunnan and a friend, Robyn Ross, left the Blacksmith in Ross's car, stopped for a few moments at the home of friends, then went to Dunnan's apartment. Dunnan went to the kitchen to fix something to eat; Ross took a .22 caliber rifle off of the rack on the wall and shot out the kitchen light above Dunnan's head. Dunnan admonished Ross, and then replaced the light bulb. Ross reloaded the rifle and fired three or four more rounds into the kitchen where Dunnan was working. This upset Dunnan. He grabbed a .410 shotgun from the wall rack, stepped behind Ross, and told Ross to put the gun down. Ross, who appeared to be trying to load the rifle, said, "That gun is not loaded." Dunnan said, "You want to bet it is not loaded?" Then Dunnan cocked the shotgun, put his finger on the trigger, and fired. The charge struck Ross in the head, killing him instantly.

Dunnan took Ross's money, his billfold, and his car, and left town. Ross's body was not discovered until January 22, seven days after the shooting. Dunnan was arrested at the home of friends in Tucson, Arizona, on January 28. Ross's car was parked near the place of Dunnan's arrest.

Defendant's first claim of error is that the magistrate failed to make the necessary and proper findings to bind the defendant over for trial. K.S.A. 1976 Supp. 22-2902(3) provides that:

". . . If from the evidence it appears that a felony has been committed and there is probable cause to believe that a felony has been committed by the defendant the magistrate shall order the defendant bound over . . ."

The magistrate who heard the preliminary examination found "that the criminal act of Second Degree Murder was probably committed, and I am therefore binding him over to the District Court, Judge Robert M. Baker, for trial on that charge, and also on the second charge of theft of a car."

This was error, but we hold that it was not prejudicial error. We have examined the transcript of the preliminary examination, consisting of some 60 pages, and find that the evidence before the magistrate would adequately support the statutory findings; further, it is evident from the magistrate's expressed findings that it appeared to him that the felonies charged had been committed. By binding the defendant over for trial, he made the tacit—if unexpressed—finding that there was probable cause to believe that those offenses had been committed by the defendant.

The better practice would have been for the magistrate to articulate his findings in the wording of the statute or, where he did not, for the state to move to amend the findings. However, on the record before us, we do not believe the defendant was prejudiced. He was fully informed of the nature and character of the offenses with which he was charged, and was apprised of the sort of evidence which would be offered against him at trial. We recently discussed at length the preliminary examination and the limited function of the magistrate in conducting it. *State v. Boone,* 218 Kan. 482, 543 P.2d 945, cert. den. 425 U.S. 915, 47 L.Ed.2d 767, 96 S.Ct. 1515. A repetition of what we said in *Boone* is not necessary here.

Defendant next contends that the bail set by the magistrate— $250,000—was so high and excessive that it amounted to no bail at all, and constituted a deprivation of his right to bail under the Eighth Amendment to the United States Constitution, under §9 of the Bill of Rights of the Constitution of Kansas, and under K.S.A. 22-2801. The bond fixed was indeed high, but the offense was most serious. We find no written motion to reduce bond, and if an oral motion was made, we find no record of it. Also, we find no indication that the defendant filed an application for writ of habeas corpus, an appropriate, efficacious, and always available method for seeking release from unlawful custody. See *Bloss v. State,* 11 Kan. 462. We hasten to say that such an application should not be made until a motion to reduce bond has been heard and ruled upon by the trial court.

In the case before us we cannot say that the court below abused its discretion at the time bail was fixed. We find no error in this regard which would justify a reversal of the conviction. Defendant has been given credit for all of the time he was in custody, and he makes no claim or showing that his defense was in any way hampered by his custody status. The matter of pretrial release is now moot.

Defendant next claims that there was not sufficient evidence of malice to support his conviction of murder in the second degree. Malice, as we have often said, consists of the intentional doing of a wrongful act without just cause or excuse. *State v. Childers,* 222 Kan. 32, 563 P.2d 999; *State v. Wilson,* 215 Kan. 437, 524 P.2d 224; *State v. Jensen,* 197 Kan. 427, 417 P.2d 273. Malice may be established by circumstantial evidence, as we noted in *State v.*

*Sparks,* 217 Kan. 204, 209, 535 P.2d 901, since elements such as malice and intent exist only in the mind of the perpetrator of the deed, and direct evidence may not exist. Also, malice may be inferred from the use of a dangerous weapon. *State v. Ritchey,* 223 Kan. 99, 101, 573 P.2d 973, and cases there cited.

In addition to the facts already set out, there was evidence that Dunnan knew the shotgun was loaded when he pointed it at Ross's head and pulled the trigger. Dunnan said that he was not afraid for his own life, he felt that he could have handled the situation had Ross pointed the rifle at him, and he was not acting under the heat of passion. Under the facts before us we conclude that there was ample evidence to establish malice.

The fourth and final point is the most serious and in our opinion requires a reversal of the murder conviction. A statement of the events as they transpired is necessary to an understanding of the point raised.

After the jury had been deliberating for about 3 hours, it sent the following question to the judge:

"Are all the qualifications of the lesser charges necessarily included in Second Degree charge?"

The judge conferred with counsel; the defendant was not present. The judge indicated that he was going to answer the question with a "yes." Defense counsel said, "I don't think that's right." The judge sent the question back to the jury with the answer "yes."

About fifteen minutes later the jury sent this question to the judge:

"Does heat of passion go with or against Second Degree?"

Neither counsel nor the defendant was present nor were they consulted. The judge returned the following answer to the jury: "Read first paragraph of instruction No. 5 and first paragraph of instruction No. 9."

The paragraphs to which the jury was directed read as follows:

"The offense of murder in the second degree with which the defendant is charged includes the lesser offenses of voluntary manslaughter and involuntary manslaughter. If you do not find the defendant guilty of murder in the second degree, then you should consider such offenses in that order."

"Relative to the charge of second degree murder against the defendant, if you find the defendant is not guilty of murder in the second degree or of voluntary manslaughter or of involuntary manslaughter, then you must find the defendant not guilty."

About an hour later, the jury submitted its final question:

"Please define in detail maliciously according to law. Please don't refer."

After consulting counsel (again the defendant was not present), the court answered, "Instruction No. 10 is all we can give you." Instruction No. 10 defined *maliciously* as "willfully doing a wrongful act without just cause or excuse."

We note that the procedure followed by the trial court does not comport with that statutorily delineated. The better practice is to follow K.S.A. 22-3420(3), which provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

The defendant and his counsel should be present at this critical stage of the trial, and the answers should be given to the jury's questions in open court, unless the defendant voluntarily absents himself or waives the right to be present. The procedure followed was error, but not necessarily prejudicial error.

This brings us to the crucial issue, whether the answers given by the trial court to the questions submitted by the jury constituted prejudicial error. Dunnan was charged with murder in the second degree; the jury was properly instructed as to that offense, and also as to the two lesser degrees of homicide, voluntary manslaughter and involuntary manslaughter.

Defendant had made several statements to law enforcement officers, and he testified in his own defense at the trial. He admitted that he held the shotgun at the time it fired and that the shot killed Ross. Without detailing his various statements and his testimony, and the other evidence, it is clear that the jury could have found that the killing was unintentional, or that it was intentional but done in the heat of passion, or that it was malicious. The questions show that the jury was confused. The answer to their first question was in error, since it advised the jury that all elements of the offenses of manslaughter are elements of second-degree murder. Manslaughter is a lesser degree of homicide, not a crime necessarily proved if second-degree murder is proved. Not all of the elements of the two degrees of manslaughter are elements of second-degree murder.

The second question submitted perhaps pinpointed the stumbling block, heat of passion. The trial court did not give the jury a clear answer to the second question, and did not explain that an intentional killing done in the heat of passion is manslaughter, not murder. The third question, with its "do not refer," clearly indicated the jury's dissatisfaction with the answer to the prior question.

When by a jury's questions to the trial court it becomes apparent that the jury is confused as to the essential elements of the various offenses of which the defendant may be convicted, it is the duty of the trial court to give the jury guidance by answering the questions accurately or by clarifying its prior instructions on the subject. We discussed in detail the trial court's obligation under similar circumstances in *State v. Bandt,* 219 Kan. 816, 549 P.2d 936.

We hold that the failure of the trial court to give the jury clear and accurate answers to its first two questions, which went to the very core of the alternative verdicts which the jury was considering, was prejudicial error and denied a fair trial to this defendant.

The judgment is affirmed as to the conviction of Austin S. Dunnan of felony theft, and as to the sentence imposed upon him therefor.

The judgment of conviction of Austin S. Dunnan of murder in the second degree is reversed, and the case is remanded for further proceedings.

MCFARLAND, J., dissents from the reversal, and would affirm *in toto.*