Paul Donald MAINVILLE, a/k/a Robert Johnson, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5177.

Supreme Court of Wyoming.

Feb. 27, 1980.

Richard H. Honaker, Public Defender, Cheyenne, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, and Michael N. Deegan, Student Intern, Wyoming Defender Aid Program (argued), for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Gay Vander-poel, Asst. Atty. Gen. (argued), for appellee.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE, and ROONEY, JJ.

RAPER, Chief Justice.

The defendant-appellant, Paul Donald Mainville, was found guilty by a jury on March 22, 1979[1] of aggravated burglary[2]

1. The crimes were committed on September 11, 1976, and thus were governed by the Wyoming criminal code as it stood at that time. All references to Wyoming statutes will be to the

1957 version. The appellant's trial was delayed because he fled this jurisdiction after his initial

2. See note 2 on page 340.

and assault and battery.[3] He was sentenced by District Judge W. J. Nicholas to a term of eight years in the Wyoming State Penitentiary with a stipulation in the judgment and sentence that appellant not be eligible for parole until he had served at least five years of that sentence. The district court also imposed a $1,000 fine.

Appellant asserts two issues:

(1) There is not sufficient evidence to support the jury's verdict of guilty of aggravated burglary;

(2) The district court's instructions on the nature of specific and general intent and on the effect of intoxication, vis-a-vis specific intent, were incorrect and mislead and confused the jury.

We will affirm the judgment of the district court.

The facts of this case are that the appellant and a male friend apparently began drinking while they were at work washing dishes at Jackson Lake Lodge. They finished work sometime before midnight and then went to the employees' bar at the lodge and drank beer until it closed around midnight. They then went to one of the employee's dorms where they planned to attend a party. That party had already pretty well broken up, so they went back to their dorm room and drank rum for a while and talked. Sometime later, in the early morning hours of September 11, 1976, the appellant and his companion, Timothy Stratton,[4] decided to go to one of the dorms occupied by female employees. Stratton testified before the jury that the appellant stated to him that his intention was to engage in sexual intercourse even if it had to be by force. Stratton further testified that he thought it wrong to do that by force " * * * if there is some other way to do it. * * * " However, Stratton accompanied the appellant to a dorm building and they both went inside. Once inside, they opened and peered in several doors. This activity awakened several of the dorm occupants, including those who eventually caught the appellant as he was fleeing from the dorm. They found an unlocked room and both went inside. Stratton was to take the left side of the room, and appellant the right. Stratton heard the girl in the bed he

arrest and was not returned here until in November of 1978. The additional delay from November, 1978, until the trial date is not fully explained by the record. No issue is raised in this appeal regarding speedy trial. Our review of the record does not reveal facts which would justify treating the delay as plain error.

2. Section 6–129, W.S.1957:

"(A) Whoever, intentionally, enters, or attempts to enter, any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than fourteen (14) years:

"(1) Any building or dwelling; or

"(2) An enclosed railroad car; or

"(3) An enclosed portion of any automobile, vehicle, or aircraft; or

"(4) A locked enclosed cargo portion of a truck or trailer; or

"(5) A room within any of the above.

"(B) Whoever violates sub-section (A) under any of the following circumstances may be imprisoned not less than five (5) years nor more than fifty (50) years:

"(1) While armed with a dangerous weapon; or

"(2) While unarmed, but arms himself with a dangerous weapon while still in the burglarized enclosure; or

"(3) While in the burglarized enclosure opens, or attempts to open, any depository by use of an explosive; or

"(4) While in the burglarized enclosure commits a battery upon a person lawfully therein.

"(C) For the purpose of this section, entry into a place during the time when it is open to the general public is with consent." (Now found at § 6–7–201, W.S.1977.)

3. Section 6–68, W.S.1957:

"Whoever, in a rude, insolent or angry manner, unlawfully touches another, is guilty of an assault and battery, and shall be fined not more than one hundred dollars, to which may be added imprisonment in the county jail not exceeding six months." (Now found at § 6–4–502, W.S.1977.)

4. Stratton fled Wyoming the night of this occurrence and returned sometime later to face charges similar to those lodged against the appellant. Stratton testified against the appellant in exchange for a plea agreement favorable to him. Stratton apparently did plead guilty to assault and battery but what sentence he was given, if any, is not reflected in this record.

was approaching gasp, so he placed his hand over her mouth to prevent her from screaming. The woman in the bed bit his finger and Stratton, once he had extricated himself, fled from the girl's dorm, went to his own room, packed his gear, and hitchhiked home to Nevada that very night. Appellant also encountered difficulties. The woman he approached began screaming and threw herself on the floor from where she was able to reach the door knob and open the door. The appellant had struck several blows to the woman he attacked and she suffered some bruising and a chipped tooth in the episode. Her screams awakened others in the dorm who came to her rescue. The appellant attempted to flee not long after Stratton did. He was hobbled somewhat because his pants were down around his ankles and he stumbled and fell several times before he was able to make his way out of the dorm. He was chased by another woman resident of the dorm who hit him several times as he was running down the hall, thus impeding his escape. A male acquaintance of this latter woman, who was staying the night in the dorm with her, was also awakened by the commotion. He got out of bed, dressed, chased the appellant, and caught him just outside the dorm. He held the appellant down on the ground for several minutes but then released him and allowed him to return to his dorm. Later that evening another employee of the Jackson Lake Lodge Company, to whom the incident had been reported, went to appellant's dorm and, after a short discussion, asked appellant to accompany him to the main lodge. There, with the help of park rangers, a sort of lineup[5] procedure was conducted with the appellant and another dishwasher who was suspected of being the other individual involved in the break-in. Several of the witnesses, including one of the women attacked, recognized the appellant. He was then taken by the park rang-

ers to the sheriff's office and placed in custody.

 The appellant asserts there was insufficient evidence to support the jury's verdict that the appellant was guilty of aggravated burglary. In our examination of the sufficiency of the evidence on appeal of a criminal matter, we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and give the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. *Padilla v. State*, Wyo.1979, 601 P.2d 189; see cases, West's Wyoming Digest, Criminal Law, Key Number 1144.13(4, 5). The appellant apparently concedes that there was sufficient evidence to constitute a burglary. However, to constitute aggravated burglary the appellant had to intend to commit rape at the time he entered the room. It is here that appellant asserts that the State's case fails. This argument is premised largely upon the fact that the jury found the appellant "not guilty" of attempted rape.[6] The appellant posits that: If the jury found him not guilty of attempted rape, it is inconsistent that the jury could have found him guilty of aggravated burglary when to make such a finding the jury *had* to find that he entered the room intending to commit rape.[7] In view of the facts recited above, and about which there is no dispute, the argument requires very little discussion. The appellant asserts that we must discount all the evidence which related to the attempted rape because the jury did not find the appellant guilty of that crime. The authority cited for this proposition simply does not support such a conclusion. The jury could have considered all the facts and circumstances presented to them in arriving at a conclusion as to whether the appellant intended to commit rape when he entered the room.

---

**5.** No issue is raised in this appeal with regard to the lineup.

**6.** The appellant was found guilty of assault and battery which was listed on the verdict form as a lesser included offense of attempted rape.

**7.** Under § 6–129, W.S.1957, supra footnote 2, the unlawful entry must be made to steal or "commit a felony." In this case the jury was specifically instructed that the State was asserting that the felony intended in this case was rape.

The appellant further asserts that the jury found that the appellant did not intend to rape the victim at the moment of the assault because they found him not guilty of attempted rape. This assertion has no basis whatsoever. All that can be concluded from that verdict of not guilty is that the appellant did not *attempt*[8] to rape the victim—i. e., he did not make " * * * a direct but ineffectual act done toward its commission," 6.102, Wyoming Pattern Jury Instructions, Criminal (W.P.J.I.Cr.). An individual may *intend* to do something without having *attempted* to do it. It is as simple as that.

Finally, appellant wants this court to ignore the testimony of the accomplice (an adequate accomplice instruction was given) who stated that appellant specifically voiced an intent to rape if that proved necessary. As to why this should be done, both appellant's brief and argument are incomprehensible. From this testimony, as well as from other evidence and circumstances presented to the jury (e. g., the appellant's pants were down), there was sufficient evidence from which a jury could find an intent to commit rape in the context of the aggravated burglary charge. *Delmont v. State*, 1907, 15 Wyo. 271, 88 P. 623. And see, *State v. Acheson*, Kan.App.1979, 601 P.2d 375, 380–381; *Flynn v. State*, 1977, 93 Nev. 247, 562 P.2d 1135, 1136; *People v. Matson*, 1974, 13 Cal.3d 35, 117 Cal.Rptr. 664, 528 P.2d 752; *State v. Rich*, 1968, 183 Neb. 128, 158 N.W.2d 533; *People v. Bard*, 1968, 70 Cal.2d 3, 73 Cal.Rptr. 547, 447 P.2d 939; *People v. Robles*, 1962, 207 Cal.App.2d 891, 24 Cal.Rptr. 708.

Appellant also asserts it is inconsistent for the jury to find he intended to rape at the time he entered the room but did not when he stood over his victim with his pants down. We need only iterate that such a conclusion need not, indeed logically cannot, be drawn from the circumstances of this case. All that can be concluded from the verdict is that the jury found the appellant intended to commit rape when he entered the room and that he did not actually *attempt* a rape once he stood at the assaulted victim's bedside. Moreover, verdicts need not necessarily be consistent. *State v. Hickenbottom*, 1947, 63 Wyo. 41, 178 P.2d 119, 126–127; 2 Wright, Federal Practice and Procedure: Criminal § 514. The record contains sufficient evidence from which the jury could conclude that the appellant intended to commit a rape when he entered the room of the victim.

▇▇▇▇ The appellant questions the instructions of the court in several regards. The appellant complained that instructions numbered 4[9] and 5[10] simply use some form

---

8. This instruction was given to the jury on the issue of attempt:

"An attempt to commit a crime consists of two elements, namely, an intent to commit the crime and a direct, although unsuccessful, act done toward its commission.

"In determining whether or not such an act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation is not sufficient to constitute an attempt. To constitute an attempt, the act must clearly indicate an unambiguous intent to commit the specific crime, and the act must be an immediate step in the execution of the crime."

9. Instruction No. 4:

"The laws of the State of Wyoming provide that:

"Whoever *intentionally* enters a room in a building without the consent of the person in lawful possession and with *intent* to commit a felony therein, is guilty of the crime of burglary.

"The burglary becomes aggravated if such person, while in the burglarized room, commits a battery upon a person who is lawfully in the room.

"Also, whoever perpetrates an assault or assault and battery upon any female with *intent* to commit the crime of rape, is guilty of a crime called attempt to commit rape.

"In this case it is charged in two counts.

"1. That the defendant *intentionally* entered room 6 in dormitory 1 at the Jackson Lake Lodge without the consent of any person in lawful possession and with the *intent* to commit the crime of rape therein; and that while in such room he committed a battery upon Nan Hilley who was lawfully in that room; all on September 11, 1976 in Teton County, Wyoming.

"2. That the defendant perpetrated an assault, or an assault and battery, upon the female Nan Hilley with intent to commit the

10. See note 10 on page 343.

of the word "intention:" Then in Instruction Number 14[11] specific intention is defined but is not limited to the "intentions" listed in earlier instructions which are specific rather than general. Appellant asserts that since the instructions do not differentiate between specific and general intent, the jury was, in essence, instructed that the intent to enter was a specific intent when any " * * * lawyer knows that the intent to enter in a burglary charge does not comprehend specific intent * * *." As is quite readily apparent, the argument proves too much. The appellant is basically correct in his analysis. The result is, however, that the instructions were unnecessarily favorable to the appellant and there is no conceivable harm to him. Errors in instructions not injurious or prejudicial are not cause for reversal, and the appellant has the burden of showing harmful error. *Martinez v. State*, Wyo. 1973, 511 P.2d 105; *Ballinger v. State*, Wyo. 1968, 437 P.2d 305; Rule 7.04, WRAP; Rule 49(a), W.R.Cr.P. The instructions which were given by the trial court say substantially the same thing as the instructions requested by appellant. No error may be predicated on these circumstances. *Repkie v. State*, Wyo.1978, 583 P.2d 1272; *Benson v. State*, Wyo.1977, 571 P.2d 595.

■ Finally, the appellant complains about the intoxication instruction given by the district court:

"Voluntary drunkenness is not an excuse for any crime. Therefore, even· if you find from the evidence in this trial that any defendant was voluntarily intoxicated at the time of the commission of the crime, you should not acquit him of responsibility for ·his actions merely because he was drunk.

"However, in offenses such as these, where essential elements of the crime charged rest in a defendant's intentions, the inebriated condition of the defendant at the time of committing the offense may be proved to the jury, as bearing upon the question of intention; for examples, whether the drunken defendant had the intentions necessary to be guilty of an offense; whether he was so intoxicated

---

crime of rape, on September 11, 1976 in Teton County, Wyoming.

"To the charges filed in the case the defendant entered pleas of 'not guilty.' Upon such pleas the burden rests upon the State of Wyoming to prove to the satisfaction of each juror, beyond a reasonable doubt, every essential element of the charges." (Emphasis added.)

10. Instruction No. 5:

"The essential elements of the two crimes charged in this case are as follows:

"Count I. Aggravated burglary.

"1. That defendant Paul Donald Mainville

"2. intentionally

"3. entered

"4. into room 6 in dormitory building 1 of the employees quarters at Jackson Lake Lodge

"5. without the consent of any person in lawful possession thereof

"6. with intent to commit the crime of rape therein

"7. and while in such room and building

"8. committed a battery

"9. upon Nan Hilley

"10. who was lawfully in that room

"11. all on September 11, 1976

"12. in Teton County, Wyoming.

"Count II. Attempt to commit rape

"1. That the defendant Paul Donald Mainville

"2. perpetrated

"3. an assault, or an assault and battery

"4. upon a female, to wit: Nan Hilley

"5. with intent to commit the crime of rape

"6. on September 11, 1976

"7. in Teton County, Wyoming."

11. Instruction No. 14:

"Where a specific intent is required to make an act on [sic] offense, such as those charged in this case, the doing of the act does not raise a presumption that it was done with specific intent. The intent must be established from the facts and circumstances established by satisfactory evidence during the trial of the case. It may be manifested by the circumstances connected with the perpetration of an offense without any positive testimony as to express intent. The question of intent is a matter for the jury to determine.

"The intent with which an act is done, is an act or emotion of the mind, seldom, if ever, capable of direct and positive proof, but it is to be arrived at by such just and reasonable deduction or inference from the acts and facts proved, as the guarded judgment of a candid and cautious man would ordinarily draw therefrom."

[NOTE: Compare the W.P.J.I.Cr., §§ 3.501 through 3.505.]

as to be incapable of forming the intentions which make out the crime charged."

The appellant asked the court to give Instruction No. 4.202, W.P.J.I.Cr., on voluntary intoxication:

"Voluntary intoxication is no excuse for the commission of a crime. However, pertinent portions of the Wyoming Statutes [12] provide that 'Where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proved to the jury, as bearing upon the question of intention.'

"Thus, evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted, or failed to act, with specific intent as charged."

While the instruction given by the court may be inartfully worded, it was adequate and not prejudicial. *Ballinger v. State*, supra. We recommend 4.202, W.P.J.I.Cr.

We shall point out, so that our position is clear, that the W.P.J.I.Cr. were developed for the purpose of making available to the district courts instructions that cover issues frequently arising in criminal cases. They are instructions in which the language has been refined so that issues are clearly drawn for the use of jurors who do not have legal training. They are not the "be all and the end all." Improvements and further refinements are always welcomed, and it is realized that they are patterns subject to modification to fit a particular case. It is suggested that a trial judge should use the W.P.J.I.Cr., especially when requested by all parties to a trial, unless established to be erroneous.

Affirmed.

---

12. Section 6–1–116, W.S.1977:

"Drunkenness shall not be an excuse for any crime or misdemeanor * * *. Where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury, as bearing upon the question of intention."