**Sharron SCHEIKOFSKY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 5511.

Supreme Court of Wyoming.

Nov. 24, 1981.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program; and Steven R. Helling, Legal Intern, Wyoming Public Defender Program, Laramie, signed the brief on behalf of appellant. Steven R. Helling appeared in oral argument.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Senior Asst. Atty. Gen. and Mark P. Higgins, Legal Intern, Cheyenne, signed the brief on behalf of appellee. Gerald A. Stack and Mark P. Higgins appeared in oral argument on behalf of appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

The State brought appellant Sharron Scheikofsky to trial on the charge of second-degree murder of Lowell Scheikofsky, her husband. A jury convicted appellant of voluntary manslaughter, and the trial court sentenced her to ten to fifteen years in prison. Appellant appeals her conviction and sentence. She asserts that the trial court erred in the instructions it gave concerning her theory of the case—self-defense—and concerning the State's burden of proof on the self-defense claim. She also asserts that the trial court abused its discretion by imposing an excessive sentence on her.

We affirm.

The trial court gave two of its own instructions at trial, one concerning self-defense and one concerning burden of proof. Appellant did not object to the instructions. ■ Rule 51, W.R.C.P., applicable to criminal appeals via Rule 31, W.R.Cr.P., provides:

" * * * No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

The purpose of Rule 31, W.R.Cr.P., is to offer the trial judge an opportunity to correct erroneous proposed instructions, or at least to clarify them. *Downs v. State,* Wyo., 581 P.2d 610 (1978); *Bentley v. State,* Wyo., 502 P.2d 203 (1972). Since no objection was made to the instructions, appellant is precluded from seeking review of them

unless she can show plain error as provided in Rule 49(b), W.R.Cr.P.[1] *Downs v. State,* supra; *Daellenbach v. State,* Wyo., 562 P.2d 679 (1977). The plain error rule is applied cautiously and only in exceptional circumstances. *Hays v. State,* Wyo., 522 P.2d 1004 (1974).

I

■ Appellant contends that Instruction No. 13 did not present her theory of the case to the jury, which is prejudicial error requiring reversal. A defendant does have the right to have his theory of the case affirmatively presented to the jury, provided that the offered instruction is sufficient to inform the court of the defendant's theory and provided that there is competent evidence in the record to support it. Failure to do so is prejudicial error. *Goodman v. State,* Wyo., 573 P.2d 400 (1977); *Benson v. State,* Wyo., 571 P.2d 595 (1977); *State v. Hickenbottom,* 63 Wyo. 41, 178 P.2d 119 (1947).

The question here is different from that in *Goodman v. State,* supra. There, no instruction at all was given on the defendant's theory of the case. Here an instruction on appellant's theory of the case was given, so that the question now before us is the sufficiency and correctness of the instruction. The appellant proposed three instructions which we assume were meant to present her theory of the case to the jury. They dealt with burden of proof, relative sizes and ages of the appellant and the victim, and the fact that the defendant fired several shots.[2] The trial court reject-

1. Rule 49(b), W.R.Cr.P., provides:
 "(b) *Plain error*—Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

2. Proposed Instruction A:
 "The defendant has produced evidence alleging that she acted in self-defense. You are instructed that before the defendant may be convicted of any crime, the State must prove to you beyond a reasonable doubt that the defendant did not act in self-defense."
 Proposed Instruction C:
 "The relative physical sizes and ages of the defendant and Lowell Scheikofsky, are fac-

tors which you may take into consideration in determining whether the defendant had reasonable grounds to believe and actually did believe that she was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repel such danger."
Proposed Instruction D:
 "If you find that the initial use of deadly force was justified you must not then find that the defendant's claim of self-defense is negated because several shots were fired or because shots were fired after the apprehended danger was over. A person in

ed the proposed instructions and supplied Instruction No. 13 instead:

"A person is justified in the use of force to defend oneself against an aggressor's imminent use of unlawful force to the extent it appears reasonable to that person under the circumstances then existing."

The court may choose to present its own instruction covering the defendant's theory of the case. We said in *State v. Hickenbottom*, supra, 178 P.2d at 131, that the defendant had a right to have his main defense in the case affirmatively presented to the jury, and that "the defendant's requested instruction, * * * *or one similar to it* should have been given by the District Court * * *." (Emphasis added.)

We think that the court's Instruction Number 13 affirmatively presented appellant's theory of the case, and that Mrs. Scheikofsky may have even received a benefit from Instruction Number 13. To claim self-defense, a defendant's belief about the necessity of defending himself must be based on reasonable grounds. A subjective belief of danger will not alone suffice; the defendant's belief of danger must also be reasonable. *Leeper v. State*, Wyo., 589 P.2d 379, 382 (1979); *State v. Sorrentino*, 31

Wyo. 129, 138–139, 224 P. 420, 34 A.L.R. 1477 (1924); *Loy v. State*, 26 Wyo. 381, 390, 185 P. 796 (1919). It is quite possible that the jury could have construed the words "reasonable to *that person* under the circumstances then existing * * *" (emphasis added) to mean that only appellant had to see the danger as imminent, not that a reasonable person similarly situated would have had to believe danger was imminent. Even assuming this were an erroneous instruction, it is certainly not cause for reversal, since it seems to favor appellant in its statement of the law of self-defense. *Mainville v. State*, Wyo., 607 P.2d 339 (1980).[3]

To show plain error, appellant has to show a violation of a clear and unequivocal rule of law and has to show that she has been materially prejudiced by that violation. *Settle v. State*, Wyo., 619 P.2d 387, 389, citing *Madrid v. State*, Wyo., 592 P.2d 709, 710 (1979). She has failed to show any harm here, let alone that harm required by the plain error rule.

## II

Appellant also objected on appeal to jury Instruction No. 12 on the ground that it failed to adequately and clearly set out the

---

imminent peril of death or serious bodily injury, or one who has reasonable grounds to believe she is in such peril, is not expected to have perfect judgment. A person who has reasonable grounds to believe herself to be threatened by an armed person does not have time to reason out every response she should make or to judge precisely how much force she has to use to ensure her safety."

3. Wyo.P.J.I.Cr., § 5.201, Justifiable Homicide in Self-defense, states the law concerning the reasonableness of the defendant's belief of imminent danger:

"If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, he had the right to use deadly force in order to defend himself. 'Deadly force' means force which is likely to cause death or serious bodily harm.

"The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the oth-

er person was about to kill him or do him serious bodily harm. The danger must have been apparent, present and imminent or must have appeared to be so under the circumstances.

"If the defendant believed that he was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repel such danger, and if a reasonable person in a similar situation seeing and knowing the same facts would be justified in believing himself in similar danger, he would be justified in using deadly force in self-defense. He would be justified even though the appearance of danger later proved to be false and there was actually neither purpose on the part of the other person to kill him or do him serious bodily harm nor imminent danger that it would be done, nor actual necessity that deadly force be used in self-defense. If the person so confronted acts in self-defense upon such appearances of danger from honest belief, his right of self-defense is the same whether the danger is real or merely apparent."

State's burden of proof on her claim of self-defense and was therefore plainly erroneous.[4] The court long ago made its pronouncement on the burden of proof in homicide cases. *Trumble v. Territory*, 3 Wyo. 280, 21 P. 1081, 6 L.R.A. 384 (1889). In a prosecution for first-degree murder, the trial court gave an instruction that, if the prosecutor had failed to prove premeditation and deliberation beyond a reasonable doubt, the law would presume the killing to be murder in the second degree in the absence of further evidence. The burden, said the instruction, would fall on the defendant to show that the killing was justifiable or excusable. The instruction was erroneous, and the court so held:

" * * * But if the defendant is presumed to be innocent until his guilt is established, and if the prosecutor must prove every material allegation of the indictment—every element of guilt—beyond reasonable doubt, before he can ask for a conviction, how can the burden of proof upon any question ever fall upon the defendant? * * * " *Trumble v. Territory*, supra, 21 P. 1081, at 1083.

 Because the instruction in the case before us failed to specifically allocate the burden of disproving self-defense to the State, appellant argues that the instruction could have permitted the jury to believe that the defendant, having raised the issue of justification, was obligated to prove it. However, appellant has to do more than conjecture about what the jury could have believed. A mere allegation of prejudice will not suffice to invoke the plain error rule.

4. Instruction No. 12:
"The law places the burden upon the state to prove the defendant is guilty. The law does not require the defendant to prove her innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced beyond a reasonable doubt and from all the evidence in the case that she is guilty. "You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions. The test you must use is this: if you have a reasonable doubt as to the truth of any of the claims made by the state, you should find the defendant not guilty. If you have no reasonable doubt as to

 This court examines instructions in their entirety when it is called upon to decide whether instructions are erroneous. *Snyder v. State*, Wyo., 599 P.2d 1338 (1979); and *Cullin v. State*, Wyo., 565 P.2d 445 (1977). They must be considered as a whole and not according to isolated phrases and paragraphs. *Hoskins v. State*, Wyo., 552 P.2d 342 (1976), reh. denied 553 P.2d 1390 (1976), cert. denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977); and *Loy v. State*, supra. Here, the instructions taken as a whole stated the law correctly. The State claimed that the murder was accomplished with malice. Malice is an essential element in the prosecution of a murder case; it must be shown beyond a reasonable doubt. *State v. Bruner*, 78 Wyo. 111, 319 P.2d 863 (1958); and *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (1942). This court and other courts define the term malice as the intentional killing of a human being by another, without legal justification or excuse and under circumstances which are insufficient to reduce the crime to manslaughter. *Nunez v. State*, Wyo., 383 P.2d 726, 729 (1963); and *State v. Sorrentino*, supra 31 Wyo. at 140, 224 P. 420. See also *State v. Dunnan*, 223 Kan. 428, 573 P.2d 1068, 1071 (1978); and *State v. McIntyre*, 106 Ariz. 439, 477 P.2d 529, 532 (1970). Instruction No. 2 told the jury that malice had to be proved beyond a reasonable doubt. Instruction No. 4 defined malice as the commission of a wrongful act done intentionally without legal justification or excuse.[5] Instruction No. 12 told the jury that it was to

the truth of any of them you should find the defendant guilty."

5. Instruction No. 2 read:
"The defendant is charged with the crime of second degree murder. The defendant has pleaded not guilty.
"To establish this charge, each of the following must be proved beyond a reasonable doubt.
"1. The crime occurred within Crook County, Wyoming, on or about the 25th day of October, 1980; and
"2. The defendant killed a human being; and
"3. The defendant acted purposely; and
"4. With malice."

find the defendant not guilty if it had any reasonable doubt as to the truth of any claim made by the State. The State claimed the existence of malice; therefore, the State also claimed lack of justification, albeit indirectly.

■■■■■ The inclusion of a specific statement of the burden of proof would have been preferable, but failure to include it is not reversible error per se. The test should be whether the instructions, taken as a whole, adequately informed the jury that the prosecution's burden of proof beyond a reasonable doubt included negating appellant's assertion of self-defense. We hold that the instructions, taken as a whole, did adequately inform the jury of the State's burden of proof in this case.

### III

■■■■■ Appellant proposed several instructions of her own (See fn. 5.) concerning burden of proof and self-defense. She presented argument in favor of her proposed instructions after the trial court had rejected them, and now contends that failure to give her proposed instructions A, C, and D was prejudicial error.

Appellant must meet the burden of showing prejudicial error. *Belondon v. City of Casper*, Wyo., 456 P.2d 238, (1969), cert. denied, 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed.2d 89 (1970); and *State v. Spears*, 76 Wyo. 82, 300 P.2d 551 (1956). Under Rule 49(a), W.R.Cr.P., for the error to be harmful, "there must be a reasonable possibility that in the absence of the error the verdict might have been more favorable to the defendant." *Nimmo v. State*, Wyo., 603 P.2d 386 (1979); and *Reeder v. State*, Wyo., 515 P.2d 969 (1973). Appellant has not proved that possibility here. We have already stated that Instruction No. 13 affirmatively presented her theory of the case to the jury, and that Instructions No. 2, No. 4 and No. 12 taken together adequately set forth the State's burden of proof on the

self-defense claim. We do not know of any case which holds that an instruction must be couched in the precise words requested by a party. A trial court may refuse requested instructions which are correct, as long as the principles embodied in the requested instructions are covered by other instructions. *Campbell v. State*, Wyo., 589 P.2d 358, 369 (1979); and *Benson v. State*, Wyo., supra. That also left the appellant free to argue the theories to the jury. Here, appellant could have presented additional self-defense argument under Instruction No. 13 and additional argument on burden of proof under Instruction No. 12.

### IV

■■■■■ Appellant's second issue on appeal is that the trial judge abused his discretion in sentencing her to ten to fifteen years in prison after her conviction of voluntary manslaughter. Appellant had no criminal record. The testimony at the sentencing hearing was favorable. Previous employers praised her work and her attitude. She was offered a job and a place to live, had probation been granted. She had been continually abused by her husband, both physically and emotionally. Appellant apparently felt that decedent drank too much, bathed too seldom, and bullied her once too often. The judge indicated that he considered all those factors in arriving at the sentence. He also stated that he considered the public's respect and regard for the law, after which he sentenced appellant to a minimum term of ten years in prison— half the time allowed by statute.

This court has stated its approach to sentence review many times. If a trial court's determination of the terms of imprisonment is within the statutory limits, it will not be disturbed absent a clear abuse of discretion. *Hanson v. State*, Wyo., 590 P.2d 832, 835 (1979); *Jones v. State*, Wyo., 602 P.2d 378, 380 (1979); *Smith v. State*, Wyo., 564 P.2d 1194, 1202 (1977); *Daellenbach v.*

Instruction No. 4 read:
" 'With malice' means the commission of a wrongful act done intentionally without legal justification or excuse. The term 'malice'

conveys the meaning of hatred, ill will, or hostility toward another and implies a wicked condition of mind."

*State,* supra, at 683. A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *Hicklin v. State,* Wyo., 535 P.2d 743, 751, 79 A.L.R.3d 1050 (1975). That is a nebulous standard, but it is as precise as we care to make it. We have an abiding reluctance to review a trial judge's determination of sentence. The determination is a burdensome decision which no trial judge could lightly make and which we will not lightly overturn.

Here the trial judge apparently balanced everything favorable in the record with a consideration of the seriousness of appellant's crime. The defense pointed out that appellant does not need to be rehabilitated; she is not a danger to society. That may or may not be accurate. Individual offenders have individual characteristics which the trial court can best evaluate, and appellant did kill another human being. Abusive as the victim's behavior toward her may have been, he was nevertheless entitled to live. The consequences would be unthinkable if all of us chose appellant's way to rid ourselves of people who mistreat us. The sentencing in this case is an affirmation that society does not and cannot condone appellant's action; it reflects the public's respect and regard for human life and for the law. We therefore see no abuse of discretion in the sentence.

Affirmed.

ROSE, Chief Justice, dissenting in part and concurring in part.

I dissent from that portion of the opinion which holds that the self-defense instruction given in this case was adequate. My reason comes from my belief that the majority fail to adhere to the rules announced in *Goodman v. State,* Wyo., 573 P.2d 400 (1977), and the case law upon which we

there relied. As to the portion of the opinion addressing the sentencing issue, I reluctantly concur for the reason that I am not, under the present state of the law, prepared to say that the trial judge abused his discretion in sentencing Sharron Scheikofsky. I am, however, bothered by the lack of desire on the part of this court to scrutinize and review sentencing questions according to abuse of discretion standards which I think we should establish. The law is, I submit, that appellate courts can and should review the propriety of sentences, and, in doing so, have a duty to set standards to guide trial judges in exercising their sentencing discretion. Thus, I feel constrained in this case to add comment concerning a proper appellate sentencing-review process.

### The Self-defense Instruction

In *Goodman v. State* we established rules having to do with the criminal defendant's right to have his theory of the case presented to the jury. Goodman had been found guilty of first-degree murder, but the jury was denied an instruction on the effect of defendant's alleged intoxication, even though the defendant, and the State, had offered instructions on that issue. In reversing the defendant's conviction, we held that the evidence of defendant's consumption of alcohol on the day of the shooting warranted an instruction having to do with the effect of that intoxication on the issue of intent. Upon acknowledging the presence of sufficient competent evidence of defendant's intoxication, we said:

" * * * he then had an absolute right, in these circumstances, to have his theory affirmatively conveyed to the jury through instruction." 573 P.2d at 408.

In reaching this conclusion we relied upon a number of prior decisions that had arrived at similar results.[1] We also said in Goodman:

" * * * General instructions on the matter of criminal-intent burden of proof and the necessity to prove all elements of the

---

[1]. *Benson v. State,* Wyo., 571 P.2d 595 (1977); *Thomas v. State,* Wyo., 562 P.2d 1287 (1977); *Blakely v. State,* Wyo., 474 P.2d 127 (1970);

*State v. Hickenbottom,* 63 Wyo. 41, 178 P.2d 119 (1947).

crime beyond a reasonable doubt are insufficient to meet the due process requirements which dictate that the defendant will have his theory *affirmatively* presented to the jury by way of instruction." 573 P.2d at 408.

We therefore reaffirmed that the giving of a theory-of-the-case instruction is a fair trial due-process requirement,[2] and that the instruction must be such as would properly apprise the jury of the defendant's theory. 573 P.2d at 408.

In coming to the conclusions that I reach here, it is necessary to observe that, with one exception, all of the cases relied upon in *Goodman* involved a situation in which a theory-of-the-case instruction had been offered but refused by the trial court. The exception to that proposition is *Benson v. State*, Wyo., 571 P.2d 595 (1977). In *Benson*, no theory-of-the-case instruction had been offered and there we held that the trial court was not under a duty to instruct the jury on defendant's theory of the case. 571 P.2d at 599–600. The instant case describes a situation in which theory-of-the-case instructions were offered and where one was given, but the instruction which the court gave to the jury was neither one of those offered, nor was it adequate for any purposes contemplated by Goodman. Thus, for me, this case presents the question which asks whether the self-defense instruction given by the court *affirmatively* instructed the jury on defendant's theory of the case, as mandated by *Goodman*.

I should perhaps observe parenthetically that this dissent takes into account the fact that a portion of the *Goodman* test concerns the sufficiency of competent evidence to support a theory-of-the-case instruction, but that question is not at issue here. The record clearly reflects that the defense counsel, the prosecutor and the trial judge realized the need for an instruction on self-defense. I can only conclude that the evidence of self-defense was, in fact, adequate

to raise the issue with which I am here concerned.

So the question becomes whether the given instruction sufficiently apprised the jury of the theory of self-defense under the facts of this case. In other words, whether the self-defense theory was *affirmatively* presented to the jury as required by *Goodman*. If it was not, then the defendant was deprived of his due-process rights. As referenced in the majority opinion, the self-defense instruction given to the jury read:

"A person is justified in the use of force to defend oneself against an aggressor's imminent use of unlawful force to the extent it appears reasonable to that person under the circumstances then existing."

The majority hold that this instruction adequately presented appellant's theory of self-defense to the jury. For me, this conclusion is erroneous. Especially is this true when it is remembered that the question, according to *Goodman*, is whether, *under the facts of the case* at bar, the self-defense theory was or was not affirmatively presented to the jury. I am unable to conclude that the given instruction met this test. The instruction fails to refer to the appellant or to the circumstances of the case, which, the defendant theorizes, gives rise to the self-defense claim. Instead, the instruction is simply a cold, unrelated statement of the law of self-defense absent any association with the facts of this case.

The word *"affirmative"* connotes an assertion that something is true as represented. The American Heritage Dictionary of the English Language (1978). Taken together, the defendant's offered instructions affirmatively set out her theory of the case. It is the rule under *Goodman* that if offered instructions are not given, then the trial court must give a theory-of-the-case instruction if the evidence supports it. 573 P.2d at 408. In this case, I am unable to conclude that the given instruction met the

---

**2.** This position was announced in *Blakely v. State*, supra, 474 P.2d at 129:

"In order to meet the basic requirements of due process, it was necessary for the court in

Blakely's trial to instruct on defendant's theory of the case * * *."

requirements of *Goodman*. The instruction may have adequately stated the law of self-defense, but it did not discharge the judicial system's obligation to insure that defendant would receive a fair trial. This is so because it did not affirmatively present appellant's theory of the case to the jury.

For the reasons given, I would have reversed and remanded.

### Review of Appellant's Sentence

Appellant also challenged the 10- to 15-year sentence imposed upon her by the trial judge. In response, the majority opinion relies upon this court's time-honored principle which says that if a sentence falls within the statutory limits, it will not be disturbed absent a clear abuse of discretion. *Jones v. State*, Wyo., 602 P.2d 378, 380 (1979). Ergo, since the appellant's sentence fell within the statutory limits, it was automatically upheld. In view of the fact that we have never adopted sentencing standards, the end result is that there is no possibility for this court to find an abuse of discretion where the trial judge's sentence is within statutory parameters.

It may be that our previous opinions concerning review of criminal sentences point to the upholding of appellant's sentence in this case; however, my doubts about our historical position in this area of the law arise because I believe that we have adopted an erroneous pattern of nonreview with respect to sentencing issues. I was worried about this when I authored the *Jones* opinion and said:

"The law in Wyoming is that the sentencing judge is given wide discretion in determining the length and conditions of the term of imprisonment to be imposed upon conviction and that such determination, if within the statutory limits, will not be disturbed absent a clear abuse of discretion. *Smith v. State*, Wyo., 564 P.2d 1194, 1202 (1977); and *Daellenbach v. State*, Wyo., 562 P.2d 679, 683 (1977). We are aware of a modern tendency of some reviewing courts to more carefully circumscribe the discretion of trial judges or juries in determining prison sentences.

E. g., *Black v. State*, Alaska, 569 P.2d 804, 805 (1977), in which the Supreme Court of Alaska approved the American Bar Association's recommendation that a maximum prison term exceed five years only in cases involving particularly serious offenses or especially dangerous offenders; and *Rogers v. Britton*, 476 F.Supp. 1036, 26 Cr.L.Rptr. 2048 (E.D. Ark.1979), in which a federal district court held unconstitutional a state sentence of life imprisonment for rape given by a jury without sentencing standards." 602 P.2d at 380–381.

I am unable to discern the real reason for our reluctance to review sentencing issues. It may be that the majority of the court are worried about an influx of sentence appeals, or that we are admittedly not as familiar with factors which are ground into the sentencing process as is the trial judge. I cannot point to specific reasons, but I am convinced that this is a poor and outdated policy. It was said in a recent article on sentencing disparity:

"A primary objection of those who oppose appellate review is that it would lead to a flood of sentence appeals. This has not been found to be the case in those states in which it has been authorized. Sentence review may have the effect of lowering the number of appeals brought upon the basis of minor procedural defect, since the real reason for bringing many of these appeals is to seek correction of what is perceived to be an excessive sentence." Morgan, *Disparity and the Sentencing Process in Wyoming District Courts: Recommendations for Change*, 11 Land & Water L.Rev. 525, 548 (1976).

This same article notes that Wyoming still remains one of those states in which nonreview of sentence at the appellate level is the rule.

For me, our tradition of nonreview of the sentencing process is tantamount to a breach of our duty to the citizens of Wyoming. We represent the highest judicial appellate authority in the state, and we must assume that society and the citizens of

Wyoming demand that the sentencing of convicted offenders meet the purposes that incarceration is designed to serve. The sentencing process is bound by the strictures of Art. 1, § 15, of the Wyoming Constitution, which provides:

> "The penal code shall be framed on the humane principles of reformation and prevention."

Many states have called for appellate review of sentences in response to these demands.[3] There is no more delicate and crucial process in the criminal-justice system than the sentencing of individual offenders where life and freedom is in the balance. To be sure, sentencing is a function which is carried out carefully and cautiously by the trial judges of Wyoming, but it is, nevertheless, a function that should be subject to appellate scrutiny for abuse of discretion according to some test which is more specific than whether or not the particular sentence falls within the minimum and maximum sentencing parameters established by the legislature. This court carefully inquires into the trial process in order to insure that the constitutional rights of the accused are made available, but we then refuse to become involved in the most crucial aspect of the proceeding, namely, that part where the individual is subjected to a possible loss of liberty and even life.

I would, therefore, strongly urge that this court adopt standards of appellate review for cases which involve sentencing challenges.

A starting place for our consideration is to be found in *Ripley v. State*, Alaska, 590 P.2d 48 (1979), where the Alaska Supreme Court said:

> "Our role in reviewing sentences imposed by the trial courts is to insure that sentences effectuate the purposes of the Alaska Constitution. In *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), we elaborated on the goals of sentence review:

>> "[I]t is our duty to examine the proceedings below to review for excessiveness or leniency the sentence imposed by the trial court, in light of the nature of the crime, the defendant's character, and the need for protecting the public. We are also obliged to consider the manner in which the sentence was imposed, including the sufficiency and accuracy of the information upon which it was based.

>> \* \* \* \* \* \*

>> "When a sentence is appealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did.

> "In implementing these provisions, the court has recognized the following goals of criminal sanctions: (1) rehabilitation of the convicted offender into a non-criminal member of society; (2) isolation of the offender from society to prevent criminal conduct during the period of confinement; (3) deterrence of the other members of the community who might have tendencies toward criminal conduct similar to those of the offender; (4) deterrence of the offender himself after release; (5) community condemnation of the individual offender, or in other words, the affirmation of societal norms for the purpose of maintaining respect for the norms themselves.

> "To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case. This court recognizes that the trial court retains primary responsibility for sentencing \* \* \*." 590 P.2d at 52.

According to the standards established by the Alaska Supreme Court, the appellate tribunal not only looks at the purposes of sentencing but also at the particular facts of the case in order to determine the propriety of the sentence.[4] I can hear the hue

---

**3.** Some of them are: Alaska, Arizona, Colorado, Hawaii, Montana, and Oregon.

**4.** For other cases recognizing the power of appellate courts to review sentences, see: *State v.*

and cry to the effect that such a review policy will result in this court's assumption of the powers and discretion of the trial court. In my judgment, this would not be the result. In actuality, the function of standards for judicial review of sentences would be to provide a safeguard for insuring that individual sentences meet the goals they are designed to meet and to provide guidance for the trial courts in carrying out this most arduous task.

As I indicated earlier, I am not prepared in this case to say whether or not the trial judge abused his discretion in sentencing Sharron Schiekofsky. I say this because we now have no sentencing standards against which to test the trial court's discretion.

I am, therefore, forced to concur in the sentencing aspect of the majority opinion, with the hope that standards will soon be established which will provide more guidance than the minimum and maximum limitations provided by the legislature.

*Bustamante*, 11 Ariz.App. 129, 462 P.2d 822 (1969); *People v. Malacara*, Colo., 606 P.2d 1300 (1980); *State v. Fuchs*, 100 Idaho 341, 597 P.2d 227 (1979).