NOT DESIGNATED FOR PUBLICATION

No. 115,387

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY C. BOETTGER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; RICHARD M. SMITH, judge. Opinion filed June 23, 2017.
Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.


GARDNER, J.:  Timothy C. Boettger was convicted by a jury of recklessly making a criminal threat. His appeal raises numerous issues, but none require reversal. Accordingly, we affirm.


*Factual and Procedural History*


Defendant was charged with criminal threat for statements he made to Cody Bonham at the Kwik Shop in Lawrence, Kansas, where Bonham worked. Defendant

frequented the Kwik Shop and had a long-standing habit of talking with Bonham and another employee, Neil Iles, while there. Defendant knew Bonham's father was a member of the sheriff's department.

On this occasion, Defendant told Bonham he had found his daughter's dog shot to death in a ditch. Defendant testified he was "very disappointed" that the sheriff's department had not done anything to investigate it. Bonham testified that Defendant is often intense when he talks about certain subjects, but this time he was more intense than usual. He said Defendant seemed angry and was "clenching his fists and visibly shaking a little bit." He testified, "[Defendant] said he had some friends up in the Paseo area in Kansas City that don't mess around, and that I was going to end up finding my dad in a ditch. And the last thing he said, he said, 'You remember that.' And walked out." Bonham called his father, who told him to type up what he could remember about the conversation, and then he called the police to make a report.

Defendant testified he knew Bonham's father was a member of the sheriff's department, but that he did not threaten to harm him. He stated that he did not say "Paseo" to Bonham, but rather, referred to having friends in North Kansas City.

James E. Rumsey was appointed as counsel for Defendant. He became concerned about Defendant's competency after meeting with him and receiving over 200 pages of legal documents Defendant had written. He brought a motion for a competency hearing but did not ask for the evaluation to be done at Larned State Security Hospital or any other specific place. Rumsey stated in the motion that Defendant was angry with him for having filed the motion and wanted to fire him.

On the day set for the hearing on the motion, the district court judge met with Rumsey and the prosecutor in an on-the-record chambers conference without Defendant present. In that conference, the judge stated he had learned that Larned had a waiting list

2

and that persons had to be in custody to "get in line" for an evaluation there. He explained that he planned to revoke Defendant's bond to accomplish this, and Rumsey agreed.

At the hearing, Defendant strenuously objected to having his bond revoked because he had not violated the conditions of his bond. He also stated he wished to go to Haskell Mental Health Facility instead of Larned. The district court judge revoked his bond and committed him to Larned. Defendant spent 68 days in jail before being moved to Larned for 60 days. Defendant was found competent to stand trial and was later convicted by a jury of the reckless form of criminal threat. This direct appeal asserts that the criminal threat statute is unconstitutional, alleges various trial errors, and challenges the pretrial procedure that landed him in Larned.

I. *Is the Reckless Disregard Provision of the Statute Unconstitutionally Overbroad?*

*Jurisdiction and Standard of Review*

We first address Defendant's contention that the reckless disregard subsection of K.S.A. 2016 Supp. 21-5415(a)(1) is unconstitutionally overbroad. That subsection provides that criminal threat is any threat to "(1) Commit violence communicated with intent to place another in fear . . . or in reckless disregard of the risk of causing such fear."

Preliminarily, we address our jurisdiction to hear this challenge. Defendant did not raise the issue below but has properly invoked exceptions to the general rule that constitutional issues cannot be raised for the first time on appeal. See *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010). Defendant's overbreadth challenge argues the reckless threat statute violates the First Amendment's protection of speech, a fundamental right. Resolving the issue is necessary to serve the ends of justice in order to assure that the protected right to speech is preserved. Further, as Defendant argues, this is solely a

legal question based on the statutory language and constitutional law. Accordingly, this challenge may be raised for the first time on appeal. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010); see *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015).

A further requirement for our jurisdiction is that the appellant show he or she has standing. *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014). The general rule is that the plaintiff must show he or she suffered a cognizable injury and show a causal connection between the injury and the challenged conduct. 298 Kan. at 1123. However, when a litigant brings an overbreadth challenge that seeks to protect First Amendment rights under the United States Constitution, standing exists even if the litigant asserts only the rights of third parties. This is because "'the mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech or expression.' [Citations omitted.]" *State v. Williams*, 299 Kan. 911, 918-19, 329 P.3d 400 (2014).

Finding that we have jurisdiction over Defendant's overbreadth challenge, we turn to the substance of his claim, keeping in mind our standard of review. The constitutionality of a statute is a question of law over which this court has unlimited review. *State v. Whitesell*, 270 Kan. 259, 268, 13 P.3d 887 (2000).

*Analysis of the Merits of the Overbreadth Challenge*

Our analysis of Defendant's constitutional challenges is guided by several general rules. We must presume the law is constitutional, resolve all doubts in favor of validating the law, uphold the law if there is a reasonable way to do so, and strike down the law only if it clearly appears to be unconstitutional. *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 544, 316 P.3d 707 (2013). The burden to establish

4

unconstitutionality rests on Defendant, as the party bringing the challenge. 298 Kan. at 544.

An overbroad statute makes punishable conduct that is, at least under some circumstances, constitutionally protected. *Dissmeyer v. State*, 292 Kan. 37, Syl. ¶ 2, 249 P.3d 444 (2011). A statute is overbroad when a significant part of its target is protected activity and there exists no satisfactory method of severing the law's constitutional applications from its unconstitutional applications. *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 533, 646 P.2d 1091 (1982). A further consideration is the degree to which the challenged statute encompasses protected conduct in relation to the statute's plainly legitimate sweep. *Whitesell*, 270 Kan. at 271.

*"True Threats" Are Not Protected by the First Amendment*

The United States Supreme Court recognized "true threats" as a type of speech that is not protected by the First Amendment and, thus, is subject to regulation in *Watts v. United States*, 394 U.S. 705, 707-08, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969). "True threats" encompass statements "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). A "true threat" is criminally actionable, unprotected free speech. Proscriptions against true threats protect people from the fear of violence and from the disruption that fear engenders. 538 U.S. at 359-60.

We quickly address Defendant's first argument—that the recklessness provision of K.S.A. 2016 Supp. 21-5415(a)(1) encompasses a broad range of politically or socially distasteful statements protected by the First Amendment. However, that argument is unavailing because the law criminalizes only statements that are threats to commit an act of violence, not statements expressing "distasteful" ideas.

5

*Is "Reckless Disregard" Too Broad a Standard?*

We next address caselaw evaluating what level of *mens rea* is necessary to avoid overbreadth of criminal threat statutes. Defendant contends the reckless form of criminal threat under K.S.A. 2016 Supp. 21-5415 is unconstitutionally overbroad because it criminalizes protected speech under the First Amendment. He admits that true threats fall outside that protection but argues that true threats require actual intent and not mere recklessness.

One Kansas case addresses an overbreadth challenge to the criminal threat statute. In *State v. Cope*, a panel of this court ruled that the reckless disregard portion of K.S.A. 21-3419, a prior version of the criminal threat statute, was not unconstitutionally overbroad, as it proscribed the use of words with a specific intended outcome. 29 Kan. App. 2d 481, 484, 29 P.3d 974 (2001), *rev'd on other grounds* 273 Kan. 642, 44 P.3d 1224 (2002). That statute defined criminal threat as any threat to "(1) Commit violence communicated with intent to terrorize another . . . or in reckless disregard of the risk of causing such terror." K.S.A. 21-3419.

That law was repealed in 2010 and replaced with the current version, which provides in relevant part that criminal threat is any threat to "(1) Commit violence communicated with intent to place another in fear . . .  or in reckless disregard of the risk of causing such fear." K.S.A. 2016 Supp. 21-5415(a)(1). Defendant argues that *Cope* does not apply because the current version of the statute is broader than the prior version—that "causing fear" encompasses more statements than does "causing terror." But Defendant's overbreadth claim is focused on the statute's inclusion of "reckless disregard," and the statute is unchanged in that respect. Defendant cites no authority showing why the statutory change from "reckless disregard of the risk of causing such terror" to "reckless disregard of the risk of causing such fear" renders *Cope* inapplicable here. See *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015) (failing to support a

point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue). Defendant also argues that *Cope* is no longer good law because it was decided prior to *Black*. There, the United States Supreme Court examined two cases under Virginia's ban on cross burning. The Virginia law provided:

> "It shall be unlawful for any person or persons, with the intent of intimidating any person or group of persons, to burn, or cause to be burned, a cross on the property of another, a highway or other public place. . . .
> "Any such burning of a cross *shall be prima facie evidence of an intent* to intimidate a person or group of persons." (Emphasis added.) Va. Code Ann. § 18.2-423 (Michie 1996).

The Court held the statute unconstitutional because the "prima facie evidence" provision meant that a person could be convicted of cross burnings done to convey a message other than to intimidate or to convey no message at all. It stated: "The provision permits the Commonwealth to arrest, prosecute, and convict a person *based solely on the fact of cross burning* itself. It is apparent that the provision as so interpreted '"would create an unacceptable risk of the suppression of ideas."' [Citations omitted.]" (Emphasis added.) *Black*, 538 U.S. at 365.

Defendant argues that *Black* established that intent is a requirement for a true threat. He implies that any statute using any *mens rea* standard less than intent to threaten encompasses expression beyond true threats and is thus overbroad. But *Black* did not rule on what level of *mens rea* is necessary in a criminal threat statute. *Black* involved a criminal statute that expressly included a showing of subjective intent—a Virginia statute banning cross burning with an intent to intimidate a person or group of persons. The constitutional necessity of that provision was never at issue. *Black* invalidated the Virginia statute because the intent element of its statute was vitiated by its prima facie

7

provision; the statute was overbroad because it could ensnare any individual who burned a cross for any or no reason. 538 U.S. at 365.

In *State v. White*, 53 Kan. App. 2d 44, 57-59, 384 P.3d 13 (2016), *rev denied* 306 Kan. ___ (April 26, 2017), we applied *Black* to the intentional form of criminal threat and held the statute was not overbroad. But no court in Kansas has applied *Black* to the reckless disregard provision of the current criminal threat statute. Defendant appears to read every instance of the word "intent" as meaning actual intent. We believe the more fair reading is that often "intent" is a shorthand method for referring to the need for a *mens rea* higher than accidental or negligent conduct.

Recklessness exists "when a person disregards a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Our criminal intent statute expressly says that recklessness is a culpable mental state. See K.S.A. 2016 Supp. 21-5202(a) ("A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'"); K.S.A. 2016 Supp. 21-5202(b) ("Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:  [1] Intentionally; [2] knowingly; [3] recklessly."); K.S.A. 2016 Supp. 21-5202(j) ("A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."). See also *State v. Johnson*, 304 Kan. 924, 936, 376 P.3d 70 (2016) (involuntary manslaughter is "'the unintentional killing of a human being committed . . . [r]ecklessly,'" and "'[r]eckless conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger.'"); *State v. Ford*, No. 112,877, 2016 WL 2610259, at * 5 (Kan. App. 2016) (unpublished opinion) (K.S.A. 8-1566 states:  "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is

8

guilty of reckless driving," and PIK Crim. 4th 66.060 states: "Reckless means driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger."), *rev. denied* 305 Kan. 1254 (2017).

The Kansas cases and statutes noted above reflect that: "Someone who acts recklessly with respect to conveying a threat necessarily grasps that he is not engaged in innocent conduct. He is not merely careless. He is aware that others could regard his statements as a threat, but he delivers them anyway." *Elonis v. United States*, 575 U.S. ___, 135 S. Ct. 2001, 2015, 192 L. Ed. 2d 1 (2015) (Alito, J., concurring in part and dissenting in part.) Recklessness is sufficient *mens rea* to separate wrongful conduct from otherwise innocent conduct. Accordingly, we find that K.S.A. 2016 Supp. 21-5415(a)(1) does not criminalize constitutionally protected conduct by criminalizing threats to commit violence communicated in reckless disregard of the risk of causing fear in another. Thus it is not overbroad.

II. *Is the Reckless Disregard Provision of the Statute Void for Vagueness?*

*Standard of Review*

Defendant next argues that the reckless disregard provision of the statute is void for vagueness. That subsection provides that criminal threat is any threat to "(1) Commit violence communicated with intent to place another in fear . . . or in reckless disregard of the risk of causing such fear." K.S.A. 2016 Supp. 21-5415(a)(1). Defendant did not raise this issue below, but he properly invokes two exceptions to the rule that issues cannot be raised for the first time on appeal; accordingly, we address this issue.

We also question *sua sponte* whether Defendant has standing to bring this challenge, as "[o]ne to whose conduct a statute clearly applies may not successfully

9

challenge it for vagueness." *Hearn v. City of Overland Park*, 244 Kan. 638, 639, 772 P.2d 758 (1989); *State v. Smith,* No. 104,598, 2012 WL 687067, at \*2-3 (Kan. App. 2012) (unpublished opinion) (defendant lacked standing because he did not contend that he had no "'fair warning'" that his conduct was within the scope of conduct prohibited by the statute), *rev. denied* 296 Kan. 1135 (2013). But *Williams* seems to imply that the standing question arises only when a party concedes that his or her conduct was prohibited by the statute at issue. 299 Kan. at 918. See *State v. Denton*, No. 111,085, 2015 WL 5036669, at \*3 (Kan. App. 2015) (unpublished opinion) (finding standing because defendant did not concede he had violated the statute), *rev. denied* 303 Kan. 1079 (2016); *State v. Thomas*, No. 110,571, 2015 WL 569371, at \*22-24 (Kan. App.) (unpublished opinion) (finding standing because defendant had not conceded that his conduct was covered by the statute), *rev. denied* 302 Kan. 1020 (2015). Defendant makes no such concession here. Accordingly, we find that his contentions sufficiently establish standing.

Defendant argues that the reckless form of criminal threat is unconstitutionally vague because it relies on the subjective fear of the victim. He alleges that the statute makes persons of reasonable intelligence guess at what causes fear in a particular person. He acknowledges, however, that none of the courts evaluating the criminal threat statute has found it unconstitutionally vague.

Courts have consistently held that K.S.A. 2016 Supp. 21-5415(a) is not unconstitutionally vague. See, *e.g.*, *Cope*, 29 Kan. App. 2d at 486 (finding the reckless form of criminal threat not unconstitutionally vague; finding that the words in the statute are commonly used and persons of common intelligence are not required to guess at the meaning of the statute); see also *White*, 53 Kan. App. 2d at 56, and cases cited therein. Our court has repeatedly found the phrase "with intent to place another in fear" is not unconstitutionally vague, noting the term "fear" has a well understood meaning, and the fear element is based on the defendant's intent to cause fear rather than the victim's subjective reaction. See, *e.g.*, *Denton*, 2015 WL 5036669, at \*4; *State v. Taylor*, No.

10

109,147, 2014 WL 113451, at *4 (Kan. App. 2014) (unpublished opinion). We find these cases to be well reasoned and adopt their analysis here. Defendant does not show why *Cope*'s holding should be altered merely because "fear" has been substituted for "terror." Finding no reason to revisit this issue, we find the reckless disregard provision of K.S.A. 2016 Supp. 21-5415(a)(1) is not unconstitutionally vague.

III. *Did the District Court Commit Clear Error in Varying from the Pattern Jury Instruction on the Elements of the Crime?*

We next examine Defendant's assertion that the district court erroneously instructed the jury. But Defendant failed to object to the challenged jury instruction during trial; thus, our review is limited to determining whether the instruction was clearly erroneous. See K.S.A. 2016 Supp. 22-3414(3); *State v. Kershaw*, 302 Kan. 772, 776, 359 P.3d 52 (2015). Under this standard, we will not grant relief unless we find error in the instruction and "are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred." *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012). The burden to show clear error under K.S.A. 22-3414(3) remains on the defendant. 295 Kan. at 516.

The pattern instructions require the State to prove that "[t]he defendant threatened to commit violence and communicated the threat with reckless disregard of the risk of causing fear in another." PIK Crim. 4th 54.370. The district court's instruction to the jury used that language, except replaced "fear in another" with "fear in Cody Bonham."

Defendant argues that the instruction required the jury to look at the risk of causing fear in Bonham, a subjective determination, rather than using the objective standard required for due process. However, neither the statute nor the instruction contains a subjective standard. Instead, the offense looks at the communicator's action and mental culpability, not the result of the communication. See *Cope*, 273 Kan. at 647;

11

*Denton*, 2015 WL 5036669, at *6. This statute does not require that the defendant actually incite fear in the victim or that any such fear be reasonable. Instead, the defendant must only act in reckless disregard of the risk of "plac[ing] another in fear." K.S.A. 2016 Supp. 21-5415(a)(1).

But even if we found error, it was clearly not reversible error. Defendant's attempt to show prejudice consists only of the assertion that: "This error had a high likelihood of impact on the jury's outcome because the State admitted that the risk of Mr. Boettger's statements causing fear varied upon whether the listener was Mr. Bonham or Mr. Iles [the co-worker]." We are firmly convinced that the jury would not have reached a different verdict if the phrasing "fear in another" had been used instead of "fear in Cody Bonham." Therefore, Defendant has failed to meet his burden to show clear error in the jury instruction.

IV. *Did the Prosecutor Commit Reversible Error in His Closing Argument?*

*Preservation of the Issue*

We next examine Defendant's complaints of prosecutorial error in closing argument. Defendant did not make contemporaneous objections to the claimed prosecutorial errors, but we can review errors in comments made by the prosecutor during closing arguments even absent such objections. *State v. Tahah*, 302 Kan. 783, 787, 358 P.3d 819 (2015), *cert. denied* 136 S. Ct. 1218 (2016).

*Standard of Review*

The Kansas Supreme Court announced a new analytical framework for evaluating claims of prosecutorial error in *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). We apply that standard here. Appellate review of claims of prosecutorial error continues to

involve a two-step process of determining whether the prosecutor committed error and whether that error deprived the defendant of a fair trial. The first step remains unchanged, so the existing body of caselaw defining the scope of a prosecutor's "wide latitude" remains sound. 305 Kan. at 104. However, the second step concerning the effect of the error no longer uses the familiar three-factor analysis in applying the constitutional harmlessness inquiry. See *Sherman*, 305 Kan. at 107, 109.

1. *Vouching for the Credibility of Witnesses*

First, Defendant argues that the prosecutor impermissibly vouched for the credibility of the complaining witness and set out a "false dichotomy" for the jury when he said:

> "If you believe the defendant, there are only two possibilities to explain how Cody testified. Either he's lying or he got the whole thing wrong. Why would Cody Bonham lie about what happened? Does he have a reason to do that? No. He has no reason to lie about what happened."

It is error for a prosecutor to state his or her personal belief about the credibility of testimony given at a criminal trial. *State v. Sprague*, 303 Kan. 418, 428-29, 362 P.3d 828 (2015). However, the type of statement made by the prosecutor here has been held not to exceed that wide latitude, at least where the defense has attacked the credibility of a State witness. See, *e.g.*, *State v. Ortega*, 300 Kan. 761, 775-77, 335 P.3d 93 (2014) (no error where prosecutor asked, "'What reason do [State witnesses] have to lie to you?'"); *State v. Campbell*, 268 Kan. 529, 540, 997 P.2d 726 (2000) (finding no error when the prosecutor said in the closing argument, "'[The eyewitness] is not lying about what she saw. She has no motive to come and tell you anything but the truth. She doesn't know the people, doesn't have an interest in the outcome. She came to tell you the truth about what she saw

13

this night.'"). See also *State v. Netherland*, 305 Kan. 167, 182, 379 P.3d 1117 (2016) (listing cases regarding closing arguments).

Defendant relies on *State v. Britt*, 295 Kan. 1018, 1029, 287 P.3d 905 (2012), for both his claim of false dichotomy and of bolstering the credibility of a witness. The dichotomy in the statement is that Bonham lied or got the whole thing wrong. But the choices outlined by the prosecutor summarized, in effect, the defense theory that Defendant did not make a threat against Bonham's father and Bonham misinterpreted his statements and the State's theory that Bonham was intentionally lying. Other options, such as innocent misrecollection or lack of recall, were not foreclosed, however, by the prosecutor's statements. We find no false dichotomy.

As to bolstering the credibility of a witness, we find *Britt* distinguishable. There, the Supreme Court found that the prosecutor's statements misstated the options available to the jury and lead it to believe that it had no choice but to find the victim entirely credible. 295 Kan. at 1029. Here, the prosecutor laid out some of the methods for resolving the conflicts in Defendant's and Bonham's testimony and walked through the potential pitfalls inherent in each method. The prosecutor's statements did not lead the jury to blindly accept Bonham's account of the events. We find no error in the prosecutor's statements. We find no "vouching" for the credibility of a witness, and it is not improper for a prosecutor to argue that of two conflicting versions of an event, one version is more likely to be credible based on the evidence. See *State v. Anthony*, 282 Kan. 201, 210, 145 P.3d 1 (2006); *State v. Davis*, 275 Kan. 107, 122, 61 P.3d 701 (2003).

2. *Referring to Facts Not in Evidence*

Secondly, Defendant alleges the prosecutor referred to facts not in evidence. He argues that "the prosecutor erred by misstating that contradictory evidence is consistent"

and "it is not factually supported that Mr. Iles' testimony indicates the accuracy of Mr. Bonham's testimony."

Defendant's argument is not persuasive. The statements invite an inference and do not refer to facts not in evidence. It is the jury's province to determine the consistency and credibility of witness testimony.

3. *Sympathy for the Victim*

Defendant's third argument is that the prosecutor improperly invoked sympathy for the victim and his family. He quotes from the closing argument: "'How could that be taken as anything other than a threat to Cody Bonham, whose dad works for the sheriff's department. Whose dad's in law enforcement. Whose dad goes out every day and risks his life?'"

The general rule is that it is impermissible for a prosecutor to inflame the jury's passions by, for example, discussing the impact of the crime on the victim or the victim's family. *State v. Adams*, 292 Kan. 60, 67, 253 P.3d 5 (2011); see also *State v. Holt*, 300 Kan. 985, 992, 336 P.3d 312 (2014) (prosecutor stated that victim's children no longer had a father after he was murdered). The important question is whether the prosecutor's argument sought to divert the jury from the evidence by making an appeal to sympathy. *State v. Nguyen*, 285 Kan. 418, 425, 172 P.3d 1165 (2007). In *Nguyen*, our Supreme Court held that the prosecutor had not exceeded the bounds of permissible argument by urging justice for the victim in closing remarks, because the closing argument was "largely evidence based." 285 Kan. at 425-26.

Here, the testimony showed that Defendant was angry at law enforcement for not doing more to investigate the death of the dog. The fact that Bonham's father was in law enforcement was an essential fact. The only comment that may invoke sympathy was that

15

Bonham's "dad goes out every day and risks his life," but we do not find that the prosecutor exceeded the latitude allowed—which includes the ability to use picturesque speech and make reasonable inferences—when these comments are considered in the context of the record as a whole. See *State v. Fisher*, 304 Kan. 242, 252, 254, 373 P.3d 781 (2016).

4. *Misstatement of the Law*

Defendant's last argument is that the prosecutor misstated the law because he referred to "a reasonable person" and indicated all that was necessary for a conviction was that Defendant acted unreasonably, as opposed to recklessly. He quotes statements from the closing argument such as, "'You determine what a reasonable person would do and you use that as a yardstick to measure the defendant's behavior against.'"

As a general rule, a prosecutor exceeds his or her wide latitude by misstating or misrepresenting the applicable law. *State v. Armstrong*, 299 Kan. 405, 419, 324 P.3d 1052 (2014). However, the context of the statements is important. Here, the prosecutor stated:

> "That was reckless, wasn't it? He's totally disregarding the risk of causing fear in Cody Bonham. . . .
>
>  . . . .
>
> ". . . [T]here's no question . . . that he communicated the threat to Cody Bonham with a reckless disregard for causing fear in Cody Bonham . . . .
>
> "Now, the instruction goes on to define what it means to act recklessly. 'A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that a result of the defendant's actions will follow.'
>
>  . . . .
>
> "'. . . This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation.' A reasonable person.

16

"Well, that's up to you to decide what a reasonable person would do in this situation. You determine what a reasonable person would do and you use that as a yardstick to measure the defendant's behavior against."

The prosecutor correctly read from the jury instructions, including the definition of recklessness. In context, the statements do not misstate the law. See K.S.A. 2016 Supp. 21-5202(j) (defining recklessness). Accordingly, these statements did not amount to error. Finding no error, we need not evaluate prejudice.

V. *Did the District Court Err in Revoking Defendant's Bond and Ordering a Competency Evaluation at Larned?*

*Standard of Review*

We next address Defendant's assertions relating to the district court's revocation of his bond and placing him into custody so he could get a competency evaluation at Larned State Security Hospital.

Defendant asserts multiple issues relating to his pretrial competency hearing. He asserts the following: that he could not be committed to the state security hospital without a recommendation by the director of a county or private institution; that the district court lacked the authority to revoke his bond since he had not violated any of his bond's conditions; that he was denied his statutory right to be present at the chambers conference at which the competency hearing was discussed, see K.S.A. 2016 Supp. 22-3302(7); and that his counsel completely abandoned him at the competency hearing by agreeing to the judge's plan to revoke his bond and put him in custody for purposes of a competency evaluation.

17

Each of these issues raises issues of statutory interpretation, subject to our unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The Due Process Clause imposes certain substantive and procedural due process requirements when the State acts to deprive an individual of his or her liberty. *State* v. *Grossman*, 45 Kan. App. 2d 420, 423, 248 P.3d 776 (2011). An appellate court exercises unlimited review when the gravamen of a defendant's complaint concerns a constitutional due process challenge. *State v. Wade*, 284 Kan. 527, 534, 161 P.3d 704 (2007).

*Mootness*

These pretrial issues are, however, moot. Defendant served 68 days in custody after his bond was revoked before he got into Larned, served another 60 days at Larned, was returned to bond thereafter, and has since been convicted. He received jail time credit for the time he was revoked and for the time he was confined at Larned. See *State v. Mackley*, 220 Kan. 518, 519, 552 P.2d 628 (1976) (time spent in mental hospital prior to sentencing must be credited as jail time). Further, Defendant has been convicted and sentenced, and it appears that he has served his sentence and postrelease supervision terms.

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. McKnight,* 292 Kan. 776, 778, 257 P.3d 339 (2011). Mootness can be found if it is clearly and convincingly shown that three conditions are met: (1) the actual controversy has ended; (2) the only judgment that could be entered would be ineffectual for any purpose; and (3) it would not impact any of the parties' rights. *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 (2012). This is the case here as to these pretrial issues.

We find the following analysis of bail errors to be instructive:

18

"'When a defendant alleges on appeal error in the fixing of bail, but fails to file a writ of habeas corpus and does not claim his defense was hampered by his custody status, the matter of pretrial release is moot.' [*Ruebke*,] 240 Kan. at 498; see *State v. Foy*, 224 Kan. 558, 562, 582 P.2d 281 (1978); *State v. Dunnan*, 223 Kan. 428, 430, 573 P.2d 1068 (1978) (excessive bail claims denied on appeal in both cases; no writs of habeas corpus filed). A criminal defendant must promptly pursue habeas corpus remedies in order to preserve for review on appeal questions concerning bail.

"The writ of habeas corpus provides a mechanism under which a criminal defendant can seek relief from confinement under an erroneous bond, or even relief while released on bail. See K.S.A. 1997 Supp. 60-1501, the statutory habeas corpus proceeding." *Smith v. State*, 264 Kan. 348, 355-56, 955 P.2d 1293 (1998).

See *State v. Ruebke*, 240 Kan. 493, 498, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987); *State v. Carrow*, No. 94,358, 2006 WL 399251, at *5 (Kan. App. 2006) (unpublished opinion) ("A defendant must promptly pursue habeas corpus remedies in order to preserve for appeal issues concerning excessive bail.").

This is not, of course, an issue of excessive bail. But the result of excessive bail is that the defendant remains in custody. And as *Smith* noted, the writ of habeas corpus provides a mechanism under which "a criminal defendant can seek relief from confinement under an erroneous bond." See K.S.A. 2016 Supp. 60-1501 (providing "any person in this state who is detained, confined or restrained of liberty on any pretense whatsoever, . . . physically present in this state may prosecute a writ of habeas corpus"). The same rationale applies here, as even assuming the pretrial errors complained of, we can fashion no remedy on appeal. Defendant's remedy was to file a writ of habeas corpus. He has not done so.

Accordingly, we apply the rule that when a defendant alleges on appeal confinement under an erroneous bond, but fails to file a writ of habeas corpus and does not claim his defense was hampered by his custody status, the matter of pretrial release is

19

moot. Defendant does, however, contend that his custody prejudiced his defense of his criminal threat charge in two respects, which we address below.

1. *Claims of abandonment by counsel*

First, Defendant claims that because his attorney abandoned him at the hearing during which he was committed to Larned for a competency evaluation, he received no extension of time in which to submit an affidavit in support of the statutory recusal process he had requested. Defendant asserts that if the recusal process had been meritorious, his trial would have been before a different court. But Defendant makes no effort to show that recusal was warranted or that the recusal process would have been meritorious. He does not allege or show how a trial with a different presiding judge would have made any difference to the outcome of his case, which was tried to a jury. Therefore, we find this claim of prejudice to be merely speculative.

Defendant also contends that his counsel was constitutionally ineffective. He claims James Rumsey completely abandoned him at the pretrial competency hearing by agreeing with the district court's plan to revoke his bond and to commit him to Larned and by failing to advocate for placing him at Haskell Mental Health Facility instead of at Larned.

Effective assistance of counsel rights attach during all critical stages of a criminal proceeding where the sentence potentially includes a term of imprisonment. *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). But Defendant does not address whether a competency hearing is a "critical stage" so as to bring it under this standard. The Supreme Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right "to be present in his own person whenever his presence has a relation,

20

reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934). See *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987).

But Defendant has not briefed how his presence at the chambers conference meets that fact-specific criteria. Compare *Stincer*, 482 U.S. at 745 (finding defendant's due process rights were not violated by his exclusion from a witness' competency hearing), with *United States v. Bergman*, 599 F.3d 1142, 1158 (10th Cir. 2010) (Holmes, J., concurring in part and dissenting in part) (finding the Sixth Amendment entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution, which includes a competency hearing). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct "'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *State v. Gleason*, 277 Kan. 624, 643, 88 P.3d 218 (2004).

We do not decide the merits of this issue because Defendant did not brief the issue of the critical stage, and an issue not briefed by the appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). Additionally, we need not reach the merits of this issue because Defendant has shown no prejudice to the conduct of his trial. Defendant seeks a new trial, but Rumsey was not Defendant's trial counsel and Rumsey's pretrial performance has not been shown to have affected the defense by other counsel of Defendant's criminal threat charge.

2. *Statutory Right to Speedy Trial*

We next address Defendant's contention that his being in custody "impacted" his statutory and constitutional rights to a speedy trial.

21

*Statutory right to speedy trial*

The State bears the responsibility for ensuring that the accused is provided with a speedy trial in accordance with K.S.A. 22-3402. *State v. Adams*, 283 Kan. 365, 369, 153 P.3d 512 (2007). K.S.A. 2016 Supp. 22-3402(a) provides that a defendant held in jail solely by reason of being charged with a crime shall be discharged from liability for the crime if he or she is not brought to trial within 150 days after arraignment. Under K.S.A. 2016 Supp. 22-3402(b), a defendant out on an appearance bond must be brought to trial within 180 days.

Defendant contends that because the district court revoked his bond for a limited period of time, the applicable speedy trial period is 150 days, which applies to defendants in jail, rather than 180 days, which applies to defendants on appearance bond. K.S.A. 2016 Supp. 22-3402(a), (b). Defendant states that 101 days elapsed from arraignment to the date his first attorney withdrew on August 15, 2014, and another 128 days passed while he was in jail and in Larned. Subtracting the statutory 60 days for the competency evaluation, the total is 169 days. See K.S.A. 2016 Supp. 22-3402(e) (time for competency evaluation is excluded for speedy trial purposes).

The State does not dispute the number of days, but it argues that the 150-day limit of 22-3402(a) does not apply because Defendant was in jail "primarily from his need for a competency evaluation, not [solely by reason of] his criminal charges." Thus, it contends the 180-day limit applies.

The speedy trial statute, however, specifically provides for continuances for competency determinations beyond those initial speedy trial deadlines. This provision is separate from the requirement that delay caused by the defendant not be included in the speedy trial calculation. See K.S.A. 2016 Supp. 22-3402(e)(1) and (2). The latter subsection includes the legislature's determination that the "time that a decision is

22

pending on competency shall never be counted against the state." Accordingly, the time between the filing of a motion for a psychiatric examination and the date on which the psychiatrist's report is received is properly chargeable against the defendant. *State v. Warren*, 224 Kan. 454, 457, 580 P.2d 1336 (1978); see *State v. Powell*, 215 Kan. 624, 527 P.2d 1063 (1974). As applied to this case, at least 128 days, rather than just 60 days, would be excluded. Thus even assuming the relevant maximum is 150 days, Defendant fails to show that the speedy trial statute was violated.

*Constitutional right to speedy trial*

Defendant also contends that the pretrial proceedings impacted his constitutional right to a speedy trial. Constitutional claims are questions of law subject to de novo review. *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 (2014).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." In evaluating Sixth Amendment claims, the Kansas Supreme Court applies the four-factor test from *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which focuses on the "(1) length of delay, (2) reason for the delay, (3) defendant's assertion of his or her right, and (4) prejudice to the defendant." *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004). No single factor alone is sufficient for finding a violation. 277 Kan. at 113.

Defendant argues that prejudice can be presumed from the 412-day delay between arraignment and trial. However, the reasons for delay must be considered. 128 days were excludable for the competency evaluation. Several delays resulted from his requests to replace his counsel, his motion for judge recusal, and other motions. The resulting length of delay, although not calculated by either party, does not give strong support to Defendant's speedy trial argument.

23

As to assertion of the right, Defendant asserted his statutory speedy trial right shortly before trial. The State argues that Defendant did not make a speedy trial objection at the competency hearing and cannot now use that delay as a basis for a speedy trial claim. However, Defendant clearly expressed his desire to not be committed to Larned and to not be jailed. He did not use the term "speedy trial," but he clearly objected. Nor do we treat his counsel's silence as a waiver. On balance, this factor weighs in Defendant's favor.

As to prejudice, we consider three factors: (1) the prevention of pretrial incarceration; (2) the anxiety of the accused; and (3) the possibility of impairing the defense through the passage of time. *State v. Weaver*, 276 Kan. 504, 511, 78 P.3d 397 (2003). Defendant was wrongfully incarcerated for 68 days, pretrial. As to anxiety of the accused, Defendant cites his testimony from the status conference when he asked for bond to be reinstated so he could go home to care for his mother and fix up her house. However, there is not a nexus between that and the anxiety considered in this factor. Defendant asserts his defense was prejudiced by a loss of evidence because Bonham could not remember the context of the conversation he had with Defendant. But any gaps in Bonham's recall likely benefitted Defendant by affecting the weight and credibility the jury gave Bonham's testimony, particularly because Defendant's counsel cross-examined Bonham on the issue of his recall. Defendant's counsel highlighted Bonham's lack of memory in his closing argument. This factor does not support a finding of prejudice.

Given Defendant's failure to establish either a presumption of prejudice or actual prejudice, we find no violation of his constitutional right to a speedy trial. None of Defendant's claims of prejudice saves his claim from being moot. See *Smith*, 264 Kan. at 355-56, and cases cited therein.

Had we reached the merits of the pretrial issues, the only one which gives us pause is the court's decision to revoke Defendant's bond despite the fact Defendant had not

violated any of its conditions. Revocation was clearly outside the authority of the district court, and we do not condone that act, regardless of any altruistic intent. Nonetheless, Defendant's remedy for that violation is not to appeal his conviction of criminal threat, but rather, to file a writ of habeas corpus, as we discussed above.

Affirmed.